# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

EDMONE W.,

Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Respondent.

No. 18 C 4641

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Edmone W. ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.] The parties have filed cross-motions for summary judgment. [ECF Nos. 14, 23.] This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment is granted in part, and the Commissioner's Motion for Summary Judgment is denied. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

Claimant filed an application for DIB on June 27, 2015, alleging disability beginning October 27, 2014. (R. 10.) Claimant's application was denied initially on August 5, 2015, and upon reconsideration on November 24, 2015, after which Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On April 27, 2017, Claimant, represented by counsel,

appeared and testified at a hearing before ALJ Melissa Santiago. (R. 10, 26–29.) The ALJ also heard testimony from a vocational expert ("VE"). (*Id.*)

On July 6, 2017, the ALJ denied Claimant's DIB claim. (R. 7–22.) In doing so, the ALJ followed the sequential evaluation process required by Social Security regulations. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity from his alleged disability onset date, October 27, 2014, through his date last insured, March 31, 2016 (the "Relevant Period"). (R. 12.) At step two, the ALJ found that Claimant had the following severe impairments during the Relevant Period: degenerative disc disease of the lumbar spine with spinal stenosis, lupus, and obesity. (*Id.*) The ALJ also determined that Claimant's obstructive sleep apnea was a non-severe impairment. (*Id.*) At step three, the ALJ found that, during the Relevant Period, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12–13.) The ALJ then determined that Claimant had the residual functional capacity ("RFC")[1] during the Relevant Period to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except [the] claimant occasionally could climb ramps and stairs. He never could climb ladders, ropes, or scaffolds. He occasionally could stoop, kneel, crouch, and crawl. The claimant could not work around unprotected heights, open flames, or dangerous and/or moving machinery. He must avoid concentrated exposure to dusts, fumes, gases, and poor ventilation. He would require a cane for ambulation, but not for balancing.

(R. 13.)

At step four, the ALJ determined that during the Relevant Period, Claimant could have performed his past relevant work as an accounting clerk and an escrow clerk. (R. 17–18.) Because of this determination, the ALJ found that Claimant was not disabled. (*Id.*) The Appeals Council

---

[1] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which "is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1520(a)(4).

declined to review the matter on May 3, 2018 (R. 1–5), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support an ALJ's decision, it will not be upheld if the ALJ did not "build an accurate and logical bridge from the evidence to her conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the

3

ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts that the ALJ committed four reversible errors:[2] (1) the ALJ improperly determined that Claimant's subjective symptom allegations are inconsistent with the evidence in the record; (2) the ALJ improperly rejected the opinions of Claimant's treating physicians; (3) the ALJ assessed an RFC that does not account for all of Claimant's limitations in combination; and (4) the ALJ relied upon facially suspect vocational testimony to find Claimant not disabled at step four of the sequential evaluation process. [ECF No. 15] at 6–14.

#### A. Subjective Symptom Allegations

Claimant first argues that the ALJ erred in evaluating his subjective symptom allegations. The Court will overturn an ALJ's assessment of a claimant's symptom allegations only if it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Despite this deference, the ALJ must provide specific reasons for her assessment that are supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Moreover, in evaluating the claimant's allegations, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotations omitted); *see also Fisher v. Berryhill*, 760 F. App'x 471, 476 (7th Cir. 2019) (explaining that a ruling is not supported by substantial evidence if the ALJ "fails to build a logical and accurate bridge between the evidence and conclusion"). Indeed, "[w]ithout an adequate explanation, neither the applicant nor

---

[2] Claimant also asserts that he should have been found disabled under Medical-Vocational Guideline 201.14. [ECF No. 15] at 5. This assertion is unsupported by any evidence that Claimant lacks transferable skills, which is a requirement for Guideline 201.14 to apply. *Id.* at 5 n.1; *see Allen v. Astrue*, No. 10 C 994, 2011 WL 3325841, at *14 (N.D. Ill. Aug. 1, 2011).

4

subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942; *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must [] explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

When evaluating a claimant's subjective symptom allegations, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations[.]" *Villano*, 556 F.3d at 562; *see* Social Security Ruling ("SSR")[3] 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). SSR 16-3p, like former SSR 96-7p,[4] requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4; *see* SSR 96-7p, 1996 WL 374186, at *1–2 (July 2, 1996).

The Court focuses on Claimant's allegations regarding his need to lie down or nap during the day because of fatigue, drowsiness, or pain, as it believes the ALJ's assessment of those

---

[3] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (internal citations and quotations omitted); *see* 20 C.F.R. § 402.35(b)(1). The Court is "not invariably bound by an agency's policy statements," but it "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (emphasis omitted).

[4] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, at *1, *7. Although the ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," it does not alter the duty of an ALJ to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). SSR 16-3 applies when ALJs "make determinations and decisions on or after March 28, 2016." *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at *49468 n.27 (Oct. 25, 2017). Because the ALJ issued her opinion on July 6, 2017 (R. 18), SSR 16-3p applies here.

allegations require remand. Claimant alleges that he started experiencing fatigue after being diagnosed with lupus in early 2013, and that his fatigue and drowsiness increased after he began suffering from his lower back condition and started taking 1200 mg of Gabapentin daily for his lower back pain. (R. 253.) Claimant alleges that due to fatigue, drowsiness, or pain, he takes two to three naps per day, with each nap lasting "on average about 15–30 minutes or more." (R. 253–54, 778, 1203.) He allegedly experiences fatigue, drowsiness, or pain after performing a few hours of household chores and yardwork, going to the grocery store, and standing, walking, and lifting for prolonged periods of time. (R. 44, 217, 228–29, 253, 1203, 1208–09, 1213.) Claimant also alleges that he is onset by fatigue or pain after sitting continuously for one to one-and-a-half hours or more. (R. 253–54, 267, 1203, 1208, 1213.) Claimant testified that he did not believe he could perform a job where he sat down and worked at a desk because after sitting for one to two hours, drowsiness or pain would set in and he would have to go lie down "or something like that for a nap[.]" (R. 38–39.)

The ALJ, however, determined that the record "does not support a finding that [C]laimant experienced the fatigue and drowsiness he alleged." (R. 14.) The ALJ found that despite his alleged fatigue, drowsiness, and problems sitting and standing, Claimant could perform "many daily activities." (*Id.*) For instance, the ALJ reasoned that despite his allegations of fatigue and drowsiness, Claimant was able to "maintain[] the concentration and persistence to complete a college degree." (*Id.*) The ALJ similarly perceived a conflict between Claimant's reported need "to take short naps two to three times per day" on the one hand, and his ability to grocery shop and perform light household chores and yardwork on the other hand. (*Id.*) The ALJ also determined that Claimant's back pain improved with conservative treatment, such as physical therapy, and that Claimant "relied upon over-the-counter medications, rather than narcotics, which would more

6

likely cause drowsiness." (R. 14–15.) Lastly, the ALJ found that Claimant "did not allege fatigue or complain of excessive drowsiness" in multiple appointments and that "there was no documentation of any lupus-associated fatigue, contrary to [C]laimant's assertions." (R. 15 (citing R. 468, 857).) There are several flaws or inadequacies in the ALJ's reasoning.

First, the ALJ did not adequately substantiate her belief that Claimant's daily activities were inconsistent with his alleged fatigue and related need to lie down. *See Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Claimant's ability to grocery shop and perform light household chores and yardwork does not conflict with his reported need to take short naps two to three times per day. Claimant reported that he napped *after* shopping or performing chores, and he explained that he does not try to complete all his chores in one day; instead, he performs, at most, two hours of chores per day. (R. 227, 253.) This leaves plenty of time for Claimant to perform chores *and* take multiple short naps in the same day. The Court also does not see why Claimant's allegations of fatigue and drowsiness were contradicted by his ability to obtain a college degree. Claimant was taking only two online courses per semester, and even though he did not have to leave his home to take these courses, he still missed two to three assignments or classes every month. (R. 14, 39–42.) Claimant generally read while lying down and he would doze off after trying to concentrate for 30–45 minutes. (R. 14, 42, 46–47.) Given the online nature of Claimant's classes and the apparent flexibility he had to lie down or doze off while studying or "attending" a class, Claimant's ability to concentrate and persist enough to obtain a degree does not conflict with his allegations of fatigue, drowsiness, or the need to lie down and nap. *See Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("An ALJ may not ignore a claimant's limiting qualifications with regard to her daily activities.").

Second, the ALJ erred both factually and logically in finding that Claimant's allegations of drowsiness were not supported because "[h]e relied upon over-the-counter medications, rather than narcotics, which would more likely cause drowsiness." (R. 14–15); *see Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (explaining that a credibility finding "based on errors of fact or logic" is not binding on an appellate court). Claimant did not rely upon only over-the-counter medications; he was prescribed and took Gabapentin for his lower back pain throughout the Relevant Period. (R. 15–16, 224, 266, 468, 471, 798, 800–03, 973, 1208.) Nor are narcotics the only types of drugs that may cause drowsiness or fatigue; although Gabapentin is not a narcotic, its side effects include drowsiness, sleepiness, and fatigue. Mayo Clinic, Gabapentin (Oral Route) Precautions, https://www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/precautions/drg-20064011 (last visited May 29, 2019); MedicineNet, Gabapentin (Neurontin) Side Effects, Uses, Dosage & Abuse, https://www.medicinenet.com/gabapentin/article.htm (last visited May 29, 2019). Indeed, Claimant's primary care physician, Saroj Bangaru, M.D., expressly noted that Claimant's dosage of Gabapentin was "limited due to sedation." (R. 902–03, 982–83, 1212, 1215.) Thus, the mere fact that Claimant was not taking narcotics does not undermine his reports that the medication he was taking—Gabapentin—made him feel drowsy and fatigued. (*See, e.g.*, R. 224, 266, 1208.)

Third, the ALJ did not build an accurate and logical bridge between the evidence and her conclusion that Claimant did not allege fatigue or complain of excessive drowsiness in multiple appointments. (R. 15.) For starters, the Court does not see how the ALJ's citation to a *single* doctor's visit (R. 857) logically shows that Claimant failed to make certain complaints at *multiple* appointments. Furthermore, the medical records do in fact show that Claimant reported fatigue or drowsiness to his doctors on multiple occasions. In July 2015, Claimant's rheumatologist, Huan

8

Chang, M.D., noted in a medical source statement that "Gabapentin sometimes makes [Claimant] feel drowsy" and that Claimant experiences fatigue after performing certain activities or actions for prolonged periods of time. (R. 1207–09, 1211.) Dr. Chang could not have made these statements unless Claimant had reported these symptoms to him in the first place—indeed, the ALJ ultimately gave little weight to Dr. Chang's July 2015 medical source statement because she believed it reflected Claimant's own allegations rather than objective findings. (R. 17.)

Then, at a rheumatology appointment in October 2015, Claimant reported that "during the day, he must lay down intermittently to manage his pain, and he has diminished concentration as the pain increases. He becomes fatigued." (R. 725–26.) The following month, Dr. Bangaru noted in a pain report that Claimant "states that he does feel fatigue and needs to lay down intermittently (2–3 times a day[]), or take 15–30 minute naps during the day to manage his pain." (R. 777–79.) Dr. Bangaru also reported Claimant's statement that his fatigue increases "when his pain level increases to 4 or above" and "that this interferes with his ability to perform and complete daily tasks." (R. 778.) And in April 2017, Dr. Chang indicated that Claimant had reported that drowsiness and fatigue were side effects of his medication, that he experienced fatigue and pain after performing certain activities over prolonged periods of time, and that he takes two or three naps during the day. (R. 1203–05.) This evidence contradicts the ALJ's apparent belief that Claimant did not report drowsiness and fatigue to his doctors, and by failing to confront it, the ALJ failed to build the requisite bridge between the evidence and her conclusion. *See Wilson v. Comm'r of Soc. Sec.*, No. 4:17-cv-04097-JEH, 2018 WL 1466102, at *7 (C.D. Ill. Jan. 9, 2018) ("For an ALJ to build an accurate and logical bridge, the ALJ 'must. . . explain why contrary evidence does not persuade.'") (quoting *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)).

Fourth, the Court fails to see the significance in whether there was any "documentation of any lupus-associated fatigue." (R. 15.) As an initial matter, the ALJ does not identify the allegations where Claimant supposedly asserted that his fatigue was associated with lupus. (*Id.*) True, Claimant reported that he started feeling some fatigue after being diagnosed with lupus. (R. 253.) But in the very next sentence, Claimant reported that his fatigue and drowsiness increased once he developed degenerative disc disease and lumbar stenosis and started taking Gabapentin. (*Id.*) In any event, it is unclear why Claimant was required to diagnose himself and specifically identify his lupus as the sole source of his fatigue and drowsiness. Regardless of whether Claimant's fatigue and drowsiness stemmed from his back pain, lupus, medication, or some combination of these things, Claimant reported these symptoms to his doctors in a manner consistent with the allegations he made in seeking disability benefits.

These errors are numerous and significant enough that the Court cannot confidently say that the ALJ would have evaluated Claimant's fatigue and drowsiness allegations in the same way had she not made these errors. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (remanding where the court was unsure "that the ALJ would have reached the same conclusion about [the claimant's] credibility if the information he considered had been accurate"); *Allord*, 455 F.3d at 821–22 (remanding where the ALJ based his credibility determination "on a variety of considerations but three of them were mistaken" because it was speculative whether the ALJ "would have made the same determination had he not erred in these respects"). Nor can the Court say that the ALJ's errors are harmless. The VE testified that an individual who is off task from job duties 15 percent or more of the workday due to pain and fatigue would be unable "to attain the minimum level of productivity that would be required of competitive workers." (R. 51.) If the ALJ had fully credited Claimant's allegations of drowsiness and fatigue and found that his RFC

requires him to nap for 90 minutes every day—representing the upper limits of his asserted nap frequency (three times per day) and duration (30 minutes)—Claimant would be unemployable.

Moreover, if the ALJ had believed Claimant's allegations about his inability to sit for more than an hour or an hour-and-a-half at one time due to pain and fatigue, the ALJ may have found that Claimant could not perform even sedentary work (as is set forth in the current RFC), which requires an individual to sit for approximately six hours in an eight-hour workday. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). And, as will be discussed below, the ALJ's flawed subjective symptom assessment formed the basis for her rejection of the opinions of Claimant's treating physicians. Thus, remand is required. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016) (finding that the ALJ's erroneous subjective symptom assessment was not harmless and required remand because "it informed several aspects of the ALJ's findings with respect to [the claimant's] residual functional capacity and consequently her ability to perform past relevant work or to adjust to other work"); *Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015) (finding that the ALJ's "flawed credibility finding hindered her ability to appropriately weigh other favorable evidence," including the opinion of the claimant's treating physician).

In sum, the ALJ failed to "build an accurate and logical bridge between the evidence" and her conclusion about the credibility of Claimant's allegations regarding his need to lie down or nap during the day because of fatigue, drowsiness, or pain. *Shramek*, 226 F.3d at 811 (internal quotations omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. Although the ALJ was not required to completely accept Claimant's allegations about fatigue or drowsiness (or any other allegations) without question, the foundation underlying her current assessment is inadequate. On remand, the ALJ should reassess all of Claimant's subjective symptom allegations in accordance

with SSR 16-3p and 20 C.F.R. § 404.1529. The ALJ should then articulate how she evaluates the full range of medical and testimonial evidence and explain the logical bridge from the evidence to her conclusions about Claimant's subjective symptom allegations.

**B. Treating Physicians' Opinions**

Next, Claimant contends that the ALJ improperly rejected the opinions of his treating physicians, Dr. Bangaru and Dr. Chang. An ALJ must give controlling weight to a treating physician's opinion "if it is well-supported and not inconsistent with other substantial evidence." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996).[5] Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion," the ALJ still must "decide what weight to give that opinion. *Campbell*, 627 F.3d at 308. To do this, the ALJ must, by regulation, consider a variety of factors, including "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Id.* (internal quotations omitted); *see* 20 C.F.R. § 404.1527(c)(2)–(6).

---

[5] The Social Security Administration has adopted new rules for agency review of disability claims involving the treating physician rule, and, in connection with these new rules, the Administration has rescinded SSR 96-2p. However, because the Administration's new rules and rescission of SSR 96-2p are effective only for claims filed on or after March 27, 2017, they are not applicable in this case. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017).

Dr. Bangaru is Claimant's primary care physician. (R. 1212, 1215.) Dr. Bangaru began treating Claimant in August 2010, and he reported that he sees Claimant at least every six months for routine evaluation. (R. 777, 1212.) Dr. Bangaru offered a medical source statement in July 2015 and completed a pain report for Claimant in November 2015. (R. 777–79, 1212–15.) Dr. Bangaru noted, among other things, that Claimant reported that he can sit for about one to one-and-a-half hours before experiencing pain, that pain and fatigue interfered with his ability to perform and complete daily tasks, and that he needed to lie down intermittently (2–3 times per day) or to take 15–30 minute naps during the day to manage his pain. (R. 778, 1213.) Although Dr. Bangaru's opinions repeated many of Claimant's subjective reports, they also acknowledged the results of Claimant's October 2014 lumbar spine MRI and his history of treatment and medication. (R. 777–79, 1213–15.)

Dr. Chang is a rheumatologist who has treated Claimant since 2013. (R. 1202, 1211.) Dr. Chang reported that he sees Claimant every three months (or sooner, if needed) for follow-up examinations concerning his lower back disorder and lupus. (R. 1207.) Dr. Chang offered a medical source statement in July 2015, and he later completed a "Medical Assessment of Condition and Ability to Do Work-Related Activities" for Claimant in April 2017. (R. 1202–05, 1207–11.) Dr. Chang stated, among other things, that Claimant can sit uninterrupted for one to one-and-a-half hours, and up to three hours total in a workday; that Claimant takes two to three naps during the day after performing light physical activities or continuous sitting; that Claimant experiences fatigue after prolonged periods of standing, walking, lifting, and performing daily household tasks; and that Claimant's medication causes drowsiness and fatigue. (R. 1203–04, 1208–09.) Dr. Chang's opinions further noted Claimant's medications, treatment history, October 2014 MRI results, and the results of several straight-leg tests. (R. 1205, 1208–10.)

13

The ALJ considered Dr. Bangaru's July 2015 and November 2015 opinions, but she assigned them "little weight" because they consisted mostly "of citations to [C]laimant's self-reported limitations and symptoms, rather than [to] Dr. Bangaru's objective findings." (R. 17.) The ALJ similarly assigned "little weight" to Dr. Chang's July 2015 and April 2017 opinions because their limitations were based "more upon [C]laimant's own allegations, rather than objective findings." (*Id.*) Thus, the ALJ's decision to give little weight to these opinions relied on her negative assessment of the credibility of Claimant's allegations. *See Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) ("The question of which physician's report to credit thus collapses into the credibility issue; because the ALJ found that [the claimant] was not credible in her reports of pain, she also gave [the treating physician's] opinion, which relied heavily on these reports, little weight.").

Because the ALJ grounded her decision to reject the opinions of Dr. Bangaru and Dr. Chang in a flawed subjective symptom assessment, she will have to re-evaluate the amount of weight to give these opinions after she reassesses Claimant's subjective symptom allegations on remand. *See Engstrand*, 788 F.3d at 662 (finding that the ALJ's "flawed credibility finding hindered her ability to appropriately weigh other favorable evidence," including the opinion of the claimant's treating physician). Moreover, in determining what weight to give Dr. Bangaru's and Dr. Chang's opinions, the ALJ failed to expressly address the factors set forth in 20 C.F.R. § 404.1527(c). (*See* R. 17.) The ALJ should do so on remand: even if a treating source's opinion is not entitled to controlling weight, it is "still entitled to deference" and must be weighed using these factors. *See Scrogham v. Colvin*, 765 F.3d 685, 697–98 (7th Cir. 2014); SSR 96-2p, at *4; *see also Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (explaining that when a treating physician's opinion is not given controlling weight, the § 404.1527 "checklist comes into play").

14

Notably, it appears that both Dr. Bangaru and Dr. Chang have lengthy treating relationships with Claimant and see him regularly (*see, e.g.*, R. 777, 1202, 1207, 1212), factors which would generally favor giving their opinions more weight. *See* 20 C.F.R. § 404.1527(c)(2)(i). Moreover, although the treating physicians' opinions reflected Claimant's allegations in many instances, the ALJ did not mention the fact that they also identified objective medical evidence, such as Claimant's MRI and straight-leg testing results. (R. 779, 1205, 1209–10, 1214.) If the doctors' opinions were based on this evidence as well as Claimant's subjective statements, they might warrant more weight. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). On remand, the ALJ may wish to re-contact Dr. Bangaru and Dr. Chang to clarify whether their opinions are based, in some material part, on their observations and objective medical evidence or, on the other hand, are based solely on Claimant's subjective reports. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (noting that an ALJ may recontact physicians to obtain additional information about the bases for their opinions).

This is not to say that the ALJ on remand must give any particular amount of weight, let alone controlling weight, to Dr. Bangaru's or Dr. Chang's opinions. But in coming to her conclusions, the ALJ must specifically address and weigh the relevant factors of 20 C.F.R. § 404.1527(c) so that a reviewing court can "review whether she engaged in the correct methodology." *Scrogham*, 765 F.3d at 697–98.

## C. Other Issues

Because the Court is remanding for the above reasons, it need not explore in detail Claimant's other arguments on appeal, as the analysis would not change the result in this case.

Neither the Commissioner nor Claimant, however, should draw any conclusions from the Court's decision not to address Claimant's other arguments. The Court expresses no opinion about the decision to be made on remand but encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions.").

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 14] is granted in part, and the Commissioner's Motion for Summary Judgment [ECF No. 23] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 21, 2019